NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4068
_____

R.F.I. ENERGY, INC.;
STATE WORKERS INSURANCE FUND,

Petitioners

v.

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF LABOR;
DAVID ELLIOTT,

Respondents
_____

Petition for Review of an Order of the
U.S. Department of Labor
Benefits Review Board
(BRB No. 09-0797 BLA)
Administrative Law Judge: Honorable Michael P. Lesniak
_____

Submitted Under Third Circuit LAR 34.1(a)
July 9, 2012

Before: RENDELL, SMITH and BARRY, <u>Circuit</u> <u>Judges</u>

(Opinion Filed: July 17, 2012)
_____

OPINION OF THE COURT
_____

RENDELL, Circuit Judge.

R.F.I. Energy, Inc. ("RFI") petitions for review of an order by the Benefits Review Board ("Board") affirming an ALJ's judgment awarding disability benefits to David C. Elliott pursuant to the Black Lung Benefits Act, 30 U.S.C. §§ 901-945 ("BLBA"). We will deny this petition.

## I.

David C. Elliott, a former surface miner, filed a claim for benefits on June 25, 2007, claiming he suffers from legal pneumoconiosis caused by his exposure to coal mine dust. Congress enacted the BLBA to compensate miners who are totally disabled by pneumoconiosis. The regulations define legal pneumoconiosis as any chronic lung disease or impairment arising out of coal-mine employment. 20 C.F.R. § 718.201(a)(2).

In order to recover benefits under the BLBA, a claimant must establish, by a preponderance of the evidence, that: (1) he has pneumoconiosis; (2) it arose from coal-mine employment; and (3) it caused him total disability. 20 C.F.R. § 718.202-205. Further, if pneumoconiosis arising out of a miner's coal-mine employment is a substantially contributing cause of his pulmonary or respiratory impairment, then the miner will be considered totally disabled on account of pneumoconiosis, rendering him eligible for benefits. 20 C.F.R. § 718.204(c)(1).

Elliott worked for RFI and its predecessors for over twenty-six years. In 2007, Elliott stopped working at RFI to undergo brain surgery. At a hearing before an ALJ, Elliott testified that he has experienced persistent breathing problems since 2005. Elliott also testified that he smoked about a pack of cigarettes a day for approximately forty

years. Three doctors, Drs. Donald Rasmussen, David A. Celko, and Gregory Fino, offered opinions as to Elliott's condition. All three doctors agreed Elliott suffered from chronic obstructive pulmonary disease ("COPD") that rendered him totally disabled. Drs. Rasmussen and Celko attributed the cause of Elliott's pulmonary impairment to both cigarette smoke and coal mine dust exposure. Dr. Fino, however, opined that smoking was the sole cause of Elliott's pulmonary impairment.

The ALJ found that Dr. Rasmussen sufficiently explained and provided sound medical research to support his position that it is impossible to distinguish between the effects of smoking and the effects of coal mine dust exposure because both are toxic exposures that result in the loss of lung function. Further, Dr. Rasmussen concluded that it is not medically justifiable to attribute Elliott's disability to one factor and not the other. The ALJ thus held that Dr. Rasmussen reasonably opined that the effects of Elliott's coal mine dust exposure at least in part caused legal pneumoconiosis, which was a substantially contributing cause of Elliott's totally disabling COPD.

Although the ALJ believed Dr. Celko's opinion was well explained, the ALJ concluded that he failed to cite any medical research to support his opinion and that he relied on an inflated coal mine employment history of thirty-three years. The ALJ accordingly discredited the opinion of Dr. Celko.

The ALJ acknowledged and reviewed Dr. Fino's opinion, which attributed Elliott's impairment exclusively to cigarette smoke. Nevertheless, the ALJ disregarded Dr. Fino's report and testimony because he concluded that (1) Dr. Fino's opinion was stated in general terms; (2) he did not provide a convincing or supportive explanation that

3

coal mine dust did not substantially contribute to Elliott's impairment; (3) he used x-ray evidence to justify his opinion after stating x-ray evidence alone is insufficient to determine the existence of pneumoconiosis; and (4) his opinion conflicted with Dr. Rasmussen's well reasoned and well supported opinion.

Among the three doctors, the ALJ found Dr. Rasmussen's opinion was best reasoned and supported by medical evidence. Therefore, the ALJ credited Dr. Rasmussen's opinion and discounted the opinions of Dr. Fino and Dr. Celko.

RFI appealed the ALJ's judgment, and, on August 19, 2010, the Board upheld the ALJ's ruling in a per curiam decision. The Board affirmed that the ALJ permissibly credited the opinion of Dr. Rasmussen over Dr. Fino's contrary opinion because substantial evidence in the record established that Elliott had legal pneumoconiosis, that it arose at least in part out of his coal mine employment, and that it caused Elliott to be totally disabled. RFI then timely petitioned for review.

## II.

We have jurisdiction to review this petition pursuant to 30 U.S.C. § 932(a). We review Board decisions for errors of law and adherence to its own standard of review. *Lombardy v. Dir., OWCP*, 355 F.3d 211, 213 (3d Cir. 2004). The Board is bound by the ALJ's findings of fact if there is substantial evidence in the record to support the result. *Id.* We independently review the record to determine whether the ALJ's findings were supported by substantial evidence. *Consolidation Coal Co. v. Kramer*, 305 F.3d 203, 207 (3d Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* If substantial evidence supports

4

the ALJ's findings, then this Court must accept them, even if we "might have interpreted the evidence differently in the first instance." *Balsavage v. Dir., OWCP*, 295 F.3d 390, 395 (3d Cir. 2002).

**III.**

Like the Board, we determine the ALJ's ruling was supported by substantial evidence in the record and was consistent with applicable legal principles.

RFI argues that the Board erred in affirming the ALJ's judgment because it was not consistent with applicable law, supported by substantial evidence, or rational. RFI contends that the ALJ's decision was not supported by substantial evidence because Elliott's award was based only on an unexplained conclusion that Dr. Rasmussen's opinions were persuasive, and because the ALJ ignored the other evidence.

In fact, however, a finding of pneumoconiosis may be made based on a physician's sound medical judgment and reasoned medical evidence that the miner suffers from pneumoconiosis, even if the x-rays are inconclusive. 20 C.F.R. 718.202(a)(4). The ALJ, on the basis of all the evidence, needs only to be persuaded that pneumoconiosis is a contributing cause of the miner's disability. *Freeman United Coal Mining Co. v. Summers*, 272 F.3d 473, 483 (3d Cir. 2001). Further, the decision as to whether a medical opinion is well reasoned is one that ultimately rests with the ALJ, not this Court. *Id.*

The ALJ's conclusion, based on Dr. Rasmussen's report, was supported by substantial evidence. Dr. Rasmussen's report detailed a collection of evidence: a physical examination; results of laboratory studies; an analysis of other possible causes, including

5

Elliott's smoking, employment and medical history; and supporting medical research. Dr. Rasmussen relied on seven different medical studies to explain that the effects on lung functioning from smoking and coal mine dust exposure are indistinguishable, and he also cited medical research to support the propositions that some impairments may not be detectable through x-rays. In sum, Dr. Rasmussen's findings were well reasoned and supported by substantial medical evidence, and therefore, it was rational for the ALJ to give more weight to Dr. Rasmussen's opinion.

RFI also argues that the Board erred by failing to review and consider the ALJ's analysis and interpretation of Dr. Fino's opinion. RFI contends that substantial evidence does not support the ALJ's interpretation of Dr. Fino's analysis, conclusions, and supporting medical research, or his mischaracterization of Dr. Fino's opinions as unpersuasive.

We agree with the Board that it was rational for the ALJ to discredit Dr. Fino's opinion because his explanation of how he distinguished the effects of cigarette smoke from the effects of coal mine dust was insufficient, and because Dr. Fino made generalizations that were not linked to Elliott individually. The Board dismissed the mischaracterization argument because Dr. Fino based his opinion, in large part, on the lack of x-ray evidence of pneumoconiosis after he acknowledged that x-ray evidence alone is insufficient to rule out pneumoconiosis.

The "ALJ is not bound to accept the opinion or theory of any medical expert, but may weigh the medical evidence and draw its own inferences." *Balsavage,* 295 F.3d at 396. Further, the "ALJ may disregard a medical opinion that does not adequately explain

6

the basis for its conclusion." *Id.* at 397. The Board held the ALJ acted within his discretion in discounting Dr. Fino's opinion and in crediting the diagnosis of Dr. Rasmussen. We too conclude, based on the available evidence, that the ALJ reasonably determined that coal dust exposure was a significant contributing cause of Elliott's COPD and that Elliott's condition therefore comports with the statutory definition of legal pneumoconiosis. The ALJ acted within his discretion in weighing the evidence and affording greater weight to Dr. Rasmussen's opinion and discrediting Dr. Fino's opinion.

## IV.

For the foregoing reasons, we will deny the petition for review.